**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**CYNTHIA ZAP,**

         **Plaintiff,**

  vs.               **6:15-cv-00624
                       (MAD/TWD)**

**MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
as Nominee,**


         **Defendant.**
_____

**APPEARANCES:**          **OF COUNSEL:**

**CYNTHIA ZAP**
4441 Six Forks Road
Suite 106-309
Raleigh, North Carolina 27609
Plaintiff, *pro se*

**MCGLINCHEY STAFFORD**       **MITRA P. SINGH, ESQ.**
New York Office
112 West 34th Street, Suite 1403
New York, New York 10120
Attorneys for Defendant

**BLANK ROME LLP**         **ANDREA M. ROBERTS, ESQ.**
New York Office
405 Lexington Avenue, 22nd floor
New York, New York 10174
Attorneys for Defendant


**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

  *Pro se* Plaintiff Cynthia Zap ("Plaintiff") commenced this action on May 22, 2015 against

Defendants Federal Home Loan Mortgage Corporation ("Freddie Mac"), Santander Bank, N.A.

("Santander Bank"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and unidentified Doe Defendants 1 through 10. *See* Dkt. No. 1. In a Memorandum-Decision and Order dated May 20, 2016, this Court dismissed all of Plaintiff's claims against Freddie Mac, Santandar Bank, and the unidentified Doe Defendants, leaving MERS as the only remaining Defendant in this action. *See* Dkt. No. 29 at 19.

Currently before the Court is Defendant MERS's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 38.

## II. BACKGROUND

As discussed in more detail in the Court's Memorandum-Decision and Order dated May 20, 2016, around June 19, 2008, Plaintiff received a residential loan from Sovereign Bank, and executed a note and mortgage in the amount of $165,000.00. *See* Dkt. No. 1 ¶¶ 26, 27. On this same day, the loan was sold to Defendant Freddie Mac and bundled into a group of loans that were subsequently sold to investors as a derivative "mortgage backed security." *Id.* ¶ 35. The mortgage states that MERS was acting "solely as a nominee for Lender and Lender's successors and assigns," and was recorded as the mortgagee of record. Dkt. No. 20-3 at 3. On May 11, 2010, MERS assigned its interest in the mortgage to Sovereign Bank, and Plaintiff was not informed of that assignment. *See* Dkt. No. 20-4 at 3; Dkt. No. 1 ¶¶ 50, 65-66, 80.

On May 14, 2010, Sovereign Bank commenced a foreclosure action against Plaintiff in New York Supreme Court of Fulton County. *See* Dkt. No. 20-5. On November 3, 2015, that court issued a final judgment of foreclosure and sale against Plaintiff. *See* Dkt. No. 25-1. Plaintiff did not appeal the state court judgment.

In this Court's previous Memorandum-Decision and Order, the Court dismissed all ten of

2

Plaintiff's causes of action against Freddie Mac, Santander Bank,[1] and the unnamed Doe Defendants. *See* Dkt. No. 29 at 19. At that time, MERS had not yet filed a notice of appearance, but the Court considered the arguments raised in Santander Bank's motion as if joined by MERS to the extent that they were in identical positions. *See id.* at 5. As a result of that decision, several of Plaintiff's claims against MERS were dismissed. *See id.* at 13-19. Plaintiff's remaining causes of action against MERS are for breach of the covenant of good faith and fair dealing, fraud in the concealment, and breach of contract. Plaintiff also seeks a declaratory judgment and to quiet title. *See id.* at 19; Dkt. No. 1 ¶¶ 149-64, 171-76, 182-97.

On June 1, 2016, MERS filed a notice of appearance. *See* Dkt. No. 31. The next day, MERS filed a letter motion requesting to file a late response to Plaintiff's complaint. *See* Dkt. No. 32. The Court granted that motion and allowed MERS to respond by June 24, 2016. *See* Dkt. No. 33. On June 24, 2016, MERS moved to dismiss the complaint for failure to state a claim. *See* Dkt. No. 38. In response, it appears that Plaintiff has attempted to move to strike MERS's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(f). *See* Dkt. No. 41.

In her complaint, Plaintiff makes various general allegations against MERS. *See* Dkt. No. 1 ¶¶ 127-35. Plaintiff claims that "MERS is not a lawful beneficiary" and that "MERS may only assign that interest in the Mortgage which it owns, which is nothing." *Id.* ¶¶ 131-32. The crux of Plaintiff's claims against MERS appears to be that, "because an assignment of the Mortgage occurred in the absence of the transfer and physical delivery of the Note, a nullity has occurred. The Mortgage is legally unenforceable by MERS or the other Defendants." *Id.* ¶ 135.

MERS responds that the complaint should be dismissed because it does not satisfy the

---

[1] As the Court previously noted, Santander Bank acquired Sovereign Bank on or about October 13, 2008, thereby acquiring the rights, responsibilities, and obligations of Sovereign Bank. *See* Dkt. No. 29 at 2.

pleading standards in Federal Rule of Civil Procedure 8(a)(2). *See* Dkt. No. 38-19 at 14. MERS further argues that none of Plaintiff's claims have merit and that Plaintiff does not have standing to challenge the Pooling and Servicing Agreement ("PSA"). *See id.* at 11-23. As such, MERS moves to dismiss the complaint in its entirety. *See id.* at 12.

### III. DISCUSSION

**A.   Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)); *see also Sutton ex rel. Rose v. Wachovia Secs., LLC*, 208 Fed. Appx. 27, 29-30 (2d Cir. 2006) (noting that, on a motion to dismiss, a court may take judicial notice of documents filed in another court).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* FED. R. CIV. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).

Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed[,]" *Id.* at 570.

Despite this recent tightening of the standard for pleading a claim, complaints by *pro se* parties continue to be accorded more deference than those filed by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). As such, *Twombly* and *Iqbal* notwithstanding, this Court must continue to "'construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'" *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002) (quoting *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir. 2000)). However, "'[t]he right of self-representation does not exempt a party from compliance with the relevant rules of procedural and substantive law.'" *Massie v. Ikon Office Solutions, Inc.*, 381 F. Supp. 2d 91, 94 (N.D.N.Y. 2005) (quoting *Clarke v. Bank of New York*, 687 F. Supp. 863, 871 (S.D.N.Y. 1988)).

**B.     Background of MERS**

Plaintiff generally alleges that MERS is an unlawful entity. *See* Dkt. No. 1 ¶¶ 127-35. Plaintiff contends that "MERS is simply an 'artificial' entity designed to circumvent certain law and other legal requirements dealing with mortgage loans. MERS never acquires actual physical

5

possession of the mortgage Note, nor do they acquire any beneficial interest in the Note." *Id.* ¶ 128. Plaintiff's primary contention seems to be that MERS cannot assign a mortgage without the transfer and physical delivery of a note. *See id.* ¶ 135. Plaintiff contends that "[w]ithout physical transfer, the sale of the note is invalid as a fraudulent conveyance or as unperfected." *Id.* ¶ 143.

These exact issues have come up in recent litigation around the country. *See, e.g.*, *Dimaria v. Accredited Home Lenders, Inc.*, No. 14-CV-6292, 2016 WL 4033164, *1-2 (E.D.N.Y. July 27, 2016); *Knox v. Countrywide Bank*, 4 F. Supp. 3d 499, 505 (E.D.N.Y. 2014). The New York Court of Appeals has provided useful background information regarding MERS that is relevant here:

> In 1993, the MERS system was created by several large participants in the real estate mortgage industry to track ownership interest in residential mortgages. Mortgage lenders and other entities, known as MERS members, subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages. Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system.
>
> The initial MERS mortgage is recorded in the County Clerk's office with "Mortgage Electronic Registration Systems, Inc." named as the lender's nominee or mortgagee of record on the instrument. During the lifetime of the mortgage, the beneficial ownership interest or servicing rights may be transferred among MERS members (MERS assignments), but these assignments are not publicly recorded; instead they are tracked electronically in MERS's private system. In the MERS system, the mortgagor is notified of transfers of servicing rights pursuant to the Truth in Lending Act, but not necessarily of assignments of the beneficial interest in the mortgage.

*Knox*, 4 F. Supp. 3d at 505 (quoting *Matter of MERSCORP, Inc. v. Romaine*, 861 N.E.2d 81, 83 (N.Y. 2006)) (footnotes omitted). Generally, "courts have upheld the MERS system against broad challenges." *Id.* (citation omitted). Courts have held that the "splitting" of the note and mortgage does not invalidate those instruments. *See id.* Thus, "the recording and transferring of

6

mortgages through MERS is a proper and acceptable method for doing so." *Dimaria*, 2016 WL 4033164, at *2.

C.      **Declaratory Judgment and Quiet Title**

Plaintiff seeks an order to quiet title and a declaratory judgment "determining the rights and duties of the parties involved in this lawsuit."[2] Dkt. No. 1 ¶¶ 158-64, 156. Plaintiff claims that she "has been damaged by the cloud of title of [her] property, making it difficult if not impossible to sell the Subject Property with title insurance." *Id.* ¶ 160.

In New York, a plaintiff may bring an equitable common law action to quiet title or an action pursuant to Article 15 of the Real Property Actions and Proceedings Law ("RPAPL"). *See Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 416-17 (S.D.N.Y. 2010). "To maintain an equitable quiet title claim, a plaintiff must allege actual or constructive possession of the property and the existence of a removable 'cloud' on the property, which is an apparent title, such as in a deed or other instrument, that is actually invalid or inoperative." *Id.* (citing *Piedra v. Vanover*, 579 N.Y.S. 2d 675, 678 (N.Y. App. Div. 1992)) (other citation omitted). To maintain a quiet title action pursuant to RPAPL Article 15, a plaintiff must allege

> (i) the nature of the plaintiff's interest in the real property and the
> source of this interest; (ii) that the defendant claims or appears to
> claim an interest in the property adverse to the plaintiff's interest,
> and the nature of the defendant's interest; (iii) whether any
> defendant is known or unknown and whether any defendant is
> incompetent; and (iv) whether all interested parties are named and
> whether the judgment will or might affect other persons not
> ascertained in the commencement of the action.

---

[2] Although Plaintiff separates her declaratory judgment and quiet title causes of action, the declaratory judgment cause of action is essentially asking the Court to determine the rights of the parties with respect to the property. *See* Dkt. No. 1 ¶ 156. As such, the Court will analyze those causes of action together. *See Boniel v. U.S. Bank N.A.*, No. 1:12-CV-3809, 2013 WL 458298, *4 (E.D.N.Y. Feb. 6, 2013).

7

*Id.* (citing N.Y. R.P.A.P.L. § 1515(1)). An important distinction between the two causes of action is that, under the RPAPL, "the plaintiff need only plead its claim to an estate or interest in land and defendant's adverse claim; plaintiff need not plead the 'invalidity' of defendant's claim as required under common law." *Knox v. Countrywide Bank*, 4 F. Supp. 3d 499, 513 (E.D.N.Y. 2014) (quoting *W. 14th St. Comm. Corp. v. 5 W. 14th Owners Corp.*, 815 F.2d 188, 196 (2d Cir. 1987)). Although Plaintiff only asserts a common law quiet title claim, the Court will liberally construe her claim as one under RPAPL Article 15 as well.

Plaintiff does not specifically allege the nature of her interest in the property or the nature of MERS's interest. Plaintiff merely makes general allegations about the process MERS uses to record mortgages and transfer notes. *See* Dkt. No. 1 ¶¶ 127-35. Plaintiff claims that the mortgage is legally unenforceable by MERS "because an assignment of the Mortgage occurred in the absence of the transfer and physical delivery of the Note." *Id.* ¶ 135. As discussed above, courts have rejected the argument that "splitting" the note and mortgage invalidates those instruments. *See Dimaria v. Accredited Home Lenders, Inc.*, No. 14-CV-6292, 2016 WL 4033164, *1-2 (E.D.N.Y. July 27, 2016); *Knox*, 4 F. Supp. 3d at 507-08. The reasoning for this is that, according to the "principal-incident rule" in New York, "while a mortgage (the incident) is unenforceable apart from its note (the principal), the note is nonetheless enforceable apart from its mortgage." *Knox*, 4 F. Supp. 3d at 507-08. As such, MERS's assignment of the mortgage did not invalidate the mortgage or the note.

Plaintiff also contends that the foreclosure action was invalid because Defendants "failed to perfect any security interest in the Subject Property" and did not have standing to bring the action. *See* Dkt. No. 1 ¶¶ 137-39. Plaintiff claims that only the holder of the note has standing to foreclose, and that none of the Defendants held the note at the time of foreclosure. *See id.* ¶¶ 138-

8

39. In this case, it was Sovereign Bank, and not MERS, that brought the foreclosure action. *See* Dkt. No. 20-5. Santander Bank (Sovereign Bank's successor) has been dismissed in this action, and the Court held in its previous decision that all claims against Santander Bank are barred by *res judicata*. *See* Dkt. No. 29 at 7-12. As such, to the extent that Plaintiff is asserting that the foreclosure action was invalid, those claims are now barred.[3] *See Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 421 (S.D.N.Y. 2008) (holding that *res judicata* "applies to defenses that could have been litigated, including defenses to foreclosure.").

Since Plaintiff cannot now question the legal validity of the foreclosure action, Plaintiff cannot sufficiently plead that she has a valid interest in the property. Without an interest in the property, Plaintiff's quiet title claim must fail. *See Neely v. RMS Residential Mortg. Solution, L.L.C.*, No. 12-CV-1523, 2013 WL 752636, *14 (E.D.N.Y. Feb. 26, 2013) ("Plaintiff seeks to maintain a quiet title action, but the foreclosure action extinguished his legal title in the property.") (footnote omitted); *In re Rodgers*, 333 F.3d 64, 67 (2d Cir. 2003) ("This principle – that a mortgagor's interest in and right to redeem a mortgaged property is terminated by a valid foreclosure sale . . . has been part of New York law for over a century.") (citation omitted).

Plaintiff also fails to plead that MERS claims an interest in the property. Plaintiff claims that "MERS may only assign that interest in the Mortgage which it owns, which is nothing" and

---

[3] The Court notes that there are certain situations in which MERS, or assignees of MERS, do not have standing to bring a foreclosure action. *See Bank of New York v. Silverberg*, 926 N.Y.S.2d 532, 538-39 (N.Y. App. Div. 2011) (holding that MERS did not have standing to bring a foreclosure action since it only held the mortgage and was never the lawful holder of the note). In interpreting *Silverberg*, the Second Circuit held that "a lender does not have standing to commence a foreclosure action when its assignor, MERS, neither received the right to transfer the mortgage note nor physically possessed the underlying mortgage note." *Cutrone v. Mortgage Electronic Registration Systems, Inc.*, 749 F.3d 137 (2d Cir. 2014). However, Sovereign Bank brought the foreclosure action in this case, which Plaintiff did not appeal, and all of Plaintiff's claims against Santander Bank (Sovereign Bank's successor) are barred by *res judicata*. *See* Dkt. No. 29 at 7-12.

that "MERS is solely . . . a 'nominee' for the lender." Dkt. No. 1 ¶¶ 132, 156. Plaintiff makes no allegations that MERS holds title or has any other interest in the property, which is an element to both quiet title causes of action. *See Barberan*, 706 F. Supp. 2d at 416-18.

In sum, Plaintiff does not sufficiently allege that she holds title to the property or that MERS is making a claim to the property, both of which are essential to Plaintiff's quiet title claim. Likewise, Plaintiff's general allegations that the mortgage is legally unenforceable are without merit. As such, Plaintiff's quiet title claims against MERS are dismissed, and the Court will not issue a declaratory judgment.

**D.     Breach of Contract**

Plaintiff also attempts to allege a breach of contract claim against MERS, although it is not clear which contractual provisions that MERS allegedly breached. *See* Dkt. No. 1 ¶¶ 192-97. Plaintiff merely makes a conclusory allegation that "[MERS] breached their agreement with Plaintiff by failing to notify Plaintiff of the change in ownership of the Note and Mortgage." *Id.* ¶ 195.

Under New York law, a party alleging a breach of contract claim must allege the following elements: (1) the existence of a contract; (2) adequate performance of the contract by the plaintiff; (3) breach by the other party; and (4) damages suffered as a result of the breach. *See Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) (citation omitted); *see also Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 357-58 (S.D.N.Y. 2001) (citation omitted). "In pleading these elements, a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue." *Wolff*, 171 F. Supp. 2d at 358 (citation omitted).

Here, the mortgage states that "[t]he Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these

10

sales."[4]  *See* Dkt. No. 20-3 at 15.  Since the mortgage itself states that the mortgage and note may be sold without notice to the mortgagor, MERS did not breach the mortgage agreement by failing to notify Plaintiff of the transfer of these instruments.  *See Rajamin v. Deutsche Bank Nat. Trust Co.*, 757 F.3d 79, 87 (2d Cir. 2014).  The Second Circuit has considered mortgages with similar language and concluded that the borrower has no breach of contract claim when she is not notified of the transfer of the note or mortgage.  *See id.*

Finally, although Plaintiff does not explicitly allege a breach of the PSA, she makes several assertions relating to the PSA.  *See* Dkt. No. 1 ¶¶ 81-120.  Plaintiff alleges that the debt "was not properly assigned and transferred to Defendants operating the pooled mortgage funds or trusts in accordance with the PSA" and that "the PSA requires that each Note or Mortgage had to be endorsed and assigned."  *Id.* ¶¶ 86, 87.  The Second Circuit has held that borrowers in Plaintiff's position do not have standing to assert a breach of contract claim pursuant to a PSA since borrowers are not parties or intended third-party beneficiaries to those contracts.  *See Rajamin*, 757 F.3d at 87.  As such, to the extent that Plaintiff is attempting to assert a breach of contract claim pursuant to the PSA, Plaintiff does not have standing to assert such claims.[5]  *See*

---

[4] Plaintiff did not attach the mortgage, note, or the assignment contract to her complaint.  When ruling on a motion to dismiss, a court may consider "documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, [and] documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint."  *See Knox v. Countrywide Bank*, 4 F. Supp. 3d 499, 513 (E.D.N.Y. 2014) (citing *Nasso v. Bio Reference Labs., Inc.*, 892 F. Supp. 2d 439, 446 (E.D.N.Y. 2012)).  Although Plaintiff did not attach these documents to her complaint, she had possession of them and relied on them in her complaint.  As such, the Court will consider them in ruling on the present motion.

[5] Plaintiff mentions the PSA periodically throughout her complaint but does not specifically allege a violation of the PSA in any other cause of action.  To the extent that Plaintiff attempts to state a claim pursuant to the PSA in any other cause of action, she does not have standing to assert those claims either.  *See Rajamin*, 757 F.3d at 87.

*id.* Since Plaintiff has no valid breach of contract claim pursuant to the mortgage or the PSA, Plaintiff's breach of contract claim is dismissed.

**E.     Fraud in the Concealment**

To maintain a common law fraud claim in New York, a plaintiff must allege that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the misrepresentation, and (4) the plaintiff suffered damages as a result of such reliance." *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 153 (2d Cir. 1995) (citing *Keywell Corp. v. Weinstein*, 33 F.3d 159 (2d Cir. 1994)) (other citation omitted). "A fraudulent concealment claim shares these same elements with the additional requirement that a plaintiff must show that the defendant had a duty to disclose the material information." *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 119 (E.D.N.Y. 2011) (citing *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 213 (S.D.N.Y. 2007)). Moreover, a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "If there are multiple defendants potentially implicated in the fraud, 'the complaint should inform each defendant of the nature of his alleged participation in the fraud.'" *Barnett v. Countrywide Bank, FSB*, 60 F. Supp. 3d 379, 389 (E.D.N.Y. 2014) (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)).

Here, Plaintiff's allegations fall well short of the requirement to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Plaintiff merely makes general conclusory allegations that Defendants "concealed the fact that the Loan was securitized since 2008" and that "[c]hanging the character of the loan in this way had a materially negative effect on Plaintiff which was known by all Defendants – but not disclosed." *Id.* ¶¶ 183, 184.

Plaintiff further alleges that "the failure to disclose the material terms of the transaction induced Plaintiff to enter into the loan . . . ." *Id.* ¶ 188. Plaintiff fails to specifically identify any fraudulent misrepresentation made by any Defendant, which is an essential element of the claim. *See Maryland Nat. Bank*, 57 F.3d at 153.

Moreover, Plaintiff has not sufficiently alleged that MERS intended to defraud her or that she suffered damages as a result of fraud. Plaintiff claims that, if MERS had disclosed the nature of the PSA, "Plaintiff would have . . . known that the actions of Defendants would have an adverse effect on the value of Plaintiff's home." Dkt. No. 1 ¶ 188. However, there is no indication that Plaintiff's obligations under the mortgage changed as a result of the PSA. As such, Plaintiff cannot claim that she suffered damages when her loan was securitized. *See Dimaria v. Accredited Home Lenders, Inc.*, No. 14-CV-6292, 2016 WL 4033164, *2 (E.D.N.Y. July 27, 2016); *Barnett*, 60 F. Supp. 3d at 387.

Even if Plaintiff had sufficiently alleged the common law fraud elements, to sustain a fraudulent concealment claim, she must also allege that MERS had a duty to disclose the material information. *See Woods*, 807 F. Supp. 2d at 119. A duty to disclose arises when there is a fiduciary or other relationship of trust between the parties. *See Remington Band Corp. v. Amsterdam-Rotterdam Bank. N.V.*, 68 F.3d 1478, 1484 (2d Cir. 1995). Here, in the context of a debtor/lender situation, there is no fiduciary relationship. *See id.* ("[A]bsent special circumstances, a lender does not incur fiduciary obligations toward its debtor."). "In the absence of a fiduciary relationship, a duty to disclose may arise if: (1) one party makes a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party; or (2) 'one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.'" *Id.* (quoting *Aaron Ferer & Sons Ltd. v.*

13

*Chase Manhattan Bank*, 731 F.2d 112, 123 (2d Cir. 1984)) (other citations omitted). Here, Plaintiff has not alleged that MERS made any partial or ambiguous statements that would have misled her. Likewise, even though MERS may have had superior knowledge, the complaint is devoid of any allegation that MERS knew that Plaintiff was acting on the basis of mistaken knowledge (or even that Plaintiff was, in fact, acting on the basis of mistaken knowledge). Plaintiff merely makes conclusory allegations that MERS wrongfully concealed the securitization agreement, but makes no allegations that would give rise to MERS having a duty to disclose such information. *See* Dkt. No. 1 ¶¶ 182-91. Moreover, since Plaintiff contractually agreed that she might not receive notice of any transfers, she cannot claim that MERS had a duty to disclose such information. *See* Dkt. No. 20-3 at 15.

**F.     Breach of the Implied Covenant of Good Faith and Fair Dealing**

Plaintiff also attempts to state a claim for breach of the implied covenant of good faith and fair dealing. *See* Dkt. No. 1 ¶¶ 171-76. "New York law 'does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled.'" *Palmer Kane LLC v. Scholastic Corp.*, No. 12 Civ. 3890, 2014 WL 1303135, *6 (S.D.N.Y. Mar. 31, 2014) (quoting *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002)). "[A] claim that defendant has breached the duty of good faith can only survive a motion to dismiss if it is based on allegations that differ from those underlying an accompanying breach of contract claim." *Id.* (citing *Cordell v. McGraw-Hill Companies, Inc.*, No. 12 Civ. 0637, 2012 WL 5264844, *4 (S.D.N.Y. Oct. 23, 2012)) *aff'd*, 525 F. App'x 22 (2d Cir. 2013). "Moreover, where the relief sought by the plaintiff in claiming a breach of the implied covenant of good faith is 'intrinsically tied to the damages allegedly resulting from the breach of contract,' there is no separate and distinct wrong that would

14

give rise to an independent claim." *ARI & Co., Inc. v. Regent Intern. Corp.*, 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003) (quoting *Alter v. Bogoricin*, No. 97 Civ. 0662, 1997 WL 691332, *8 (S.D.N.Y. Nov. 6, 1997)).

Here, Plaintiff's breach of contract claim is based on the same facts as her breach of the implied covenant of good faith and fair dealing claim. *See* Dkt. No. 1 ¶¶ 171-76, 192-97. In her breach of contract claim, Plaintiff alleges that MERS breached the mortgage agreement "by failing to notify Plaintiff of the change in ownership of the Note and Mortgage." *Id.* ¶ 195. Likewise, in Plaintiff's claim for breach of the implied covenant of good faith and fair dealing, she "alleges that non-disclosure of the ownership of the Note and Mortgage in question[] constitutes a breach of the covenant." *Id.* ¶ 173. These allegations are based on the exact same facts, and there are no other allegations in either cause of action. *See id.* ¶¶ 171-76, 192-97. Moreover, the damages Plaintiff seeks in her breach of the implied covenant of good faith and fair dealing claim are "intrinsically tied" to the relief she seeks in her breach of contract claim. *See ARI & Co.*, 273 F. Supp. 2d at 522-23. The damages requested for both claims arise from MERS's alleged breach of the mortgage agreement and the subsequent foreclosure sale. *See id.* ¶¶ 174-76, 195-97.

Despite the existence of a contract, a plaintiff may still succeed on a claim for breach of the implied covenant of good faith and fair dealing if she can "establish[] a legal duty separate and apart from contractual duties." *Washington v. Kellwood Co.*, No. 05 Civ. 10034, 2009 WL 855652, *6 (S.D.N.Y. Mar. 24, 2009). The following constitute the elements for such a claim: "(1) defendant must owe plaintiff a duty to act in good faith and conduct fair dealing; (2) defendant must breach that duty; and (3) the breach of duty must proximately cause plaintiff's damages." *Id.* (citation omitted). Here, Plaintiff fails to allege any of these elements. As discussed above, MERS was permitted to assign its interest in the mortgage without notification

to Plaintiff. As such, Plaintiff has not sufficiently alleged that MERS acted unfairly or in bad faith. Moreover, since there is no indication that Plaintiff's obligations under the mortgage changed as a result of MERS's assignment of the mortgage, she cannot claim that she suffered damages as a result of the assignment.

Accordingly, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is dismissed.

### G. Plaintiff's Motion to Strike

In Plaintiff's response to MERS's motion to dismiss, it appears that Plaintiff has attempted to move to strike MERS's motion pursuant to Federal Rule of Civil Procedure 12(f). *See* Dkt. No. 41 ("Plaintiff . . . moves to strike this motion."). Rule 12(f) provides that "[t]he court may strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). Rule 7 defines pleadings as "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a). Accordingly, "motions to dismiss are not pleadings, and therefore, Plaintiff cannot strike portions of the . . . motions to dismiss." *Spiteri v. Russo*, No. 12-CV-2780, 2013 WL 4806960, *64 (E.D.N.Y. Sept. 7, 2013). As such, Plaintiff's motion to strike is denied.

### H. Leave to Amend

When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citations omitted). Of course, an opportunity to amend is

not required where "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted).

Here, granting Plaintiff leave to amend would be futile. As discussed above, Plaintiff cannot state a claim for quiet title since she cannot contest the validity of the foreclosure sale, which extinguished her interest in the property. *See In re Rodgers*, 333 F.3d 64, 67 (2d Cir. 2003). Plaintiff's allegations regarding the splitting of the note and the mortgage are also without merit. *See Dimaria v. Accredited Home Lenders, Inc.*, No. 14-CV-6292, 2016 WL 4033164, *1-2 (E.D.N.Y. July 27, 2016). Likewise, Plaintiff cannot state a claim for breach of contract under any circumstances. Plaintiff's sole contention is that MERS should have disclosed the subsequent transfer of the mortgage and note, but the mortgage explicitly states that these instruments may be sold without notice to Plaintiff. *See* Dkt. No. 20-3 at 15. Plaintiff's claim for fraud in the concealment is also without merit. As discussed above, Plaintiff cannot plausibly claim that she suffered damages or that MERS had a duty to disclose information, both of which are essential elements to a fraud in the concealment cause of action. *See Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 119 (E.D.N.Y. 2011) (citation omitted). Finally, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is without merit. This claim is duplicitive of Plaintiff's breach of contract claim, and Plaintiff cannot plausibly claim that MERS acted unfairly with respect to the mortgage. Since better pleading would not cure the defects in Plaintiff's complaint, the Court will not grant Plaintiff leave to amend.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss (Dkt. No. 38) is **GRANTED**; and the Court

17

further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED WITH PREJUDICE**; and the Court further

**ORDERS** that Plaintiff's cross-motion to strike (Dkt. No. 41) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 1, 2016
 Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge